804 So.2d 484 (2001)
Malachi FREEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-2943.
District Court of Appeal of Florida, Second District.
December 5, 2001.
Rehearing Denied January 11, 2002.
James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Wendy Buffington, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
Malachi Freeman appeals an order finding him guilty of indirect criminal contempt for failing to appear in response to a subpoena. The clerk of the circuit court certified that a transcript of a hearing, which took place on April 14, 2000, does not exist. Criminal proceedings must be reported. Fla. R. Jud. Admin. 2.070(g). Because a record of this hearing cannot be provided through no fault of the defendant, and this missing record is necessary for this court's complete review, we must reverse and remand this matter for a new hearing on Mr. Freeman's indirect criminal contempt. See Jones v. State, 780 So.2d 218 (Fla. 2d DCA 2001).
Reversed and remanded.
*485 DANAHY, PAUL W., (Senior) Judge, Concurs.
CASANUEVA, A.C.J., Concurs specially with opinion.
CASANUEVA, Acting Chief Judge, Concurring specially.
I concur with the court's opinion and write to discuss issues that may arise should Mr. Freeman be retried.
By an order to show cause, Mr. Freeman was charged with an indirect criminal contempt of court. The show cause order alleged that he willfully "failed to appear in response" to a subpoena which required his appearance in the circuit court on April 10, 2000, at 8:00 a.m. The subpoena commanded Mr. Freeman to appear in a criminal matter "for the purpose of giving truthful testimony in behalf of the State of Florida in a Jury Trial" in a criminal matter. As set forth in the order to show cause, the subpoena called him to appear at 8:00 a.m. on April 10, 2000. It is undisputed that Mr. Freeman did not appear as directed by the subpoena.
In the amended order of indirect criminal contempt, the trial court found Mr. Freeman guilty and sentenced him to six months in the county jail. Among the bases set forth in support of its finding of guilt were that "the Defendant was instructed by this Court on March 3, 2000 that he was to make himself available on April 10, 2000 for his co-defendant's trial" and that the "Defendant testified that he felt he was `forced' to be in court for the April 10, 2000, and thus did not appear."
Here, Mr. Freeman's belief that he was forced to be in court is, as the trial court impliedly found, no defense. In Villate v. State, 663 So.2d 672 (Fla. 4th DCA 1995), the court held that the witness's failure to appear at trial because of his fear of gang retaliation did not excuse his appearance and affirmed the determination that his conduct constituted indirect criminal contempt. In this case, however, the procedural posture of the criminal matter for which Mr. Freeman was subjoined may complicate the matter on retrial. The incomplete and inadequate record on appeal suggests that the criminal case, at the request of the parties and with the court's approval, was transferred from the jury to the nonjury trial docket to be heard on a date other than April 10, 2000. The record is silent as to the date of this transfer as well as its precipitating cause but hints that the change of trial date was not prompted by Mr. Freeman's conduct. Therefore, the issue presented is whether Mr. Freeman may be found in indirect criminal contempt for failing to appear for a trial no longer scheduled to begin on the date commanded by the subpoena. "The test in determining whether conduct constitutes criminal contempt is whether the conduct interferes with or impugns the judicial function, not whether it causes a particular judge to feel aggrieved or vexed." Via v. State, 633 So.2d 1198, 1198 (Fla. 2d DCA 1994). Logic suggests that Mr. Freeman could not have interfered with a proceeding that did not occur.
In Parisi v. Broward County, 769 So.2d 359, 363-64 (Fla.2000), the supreme court discussed the "contours of contempt jurisprudence" and explained that "[c]riminal contempt proceedings are utilized to indicate the authority of the court or to punish for an intentional violation of an order of the court." A criminal contempt trial triggers certain constitutional guarantees. One of the trial court's findings reflects that the court had personally instructed the accused to make himself available on April 10, 2000. The trial court's role is to be a neutral fact finder. If the prosecution seeks to establish the fact of the trial court's presumed oral instruction to Mr. Freeman through the judge's recollection *486 and testimony, it might be appropriate for a different judge to preside at the hearing to avoid a situation where the initial trial judge is an adverse fact witness, the trier of fact, and the potential sentencer.