BENTON, J.,
concurring in part and dissenting in part.
We review contempt orders for abuse of discretion. See Thomas v. State, 752 So.2d 679, 685 (Fla. 1st DCA 2000). But a “ ‘judge cannot base contempt upon noncompliance with something an order does not say.’ Under such circumstances, the standard of review is legal error, not abuse of discretion.” DeMello v. Buckman, 914 So.2d 1090, 1093 (Fla. 4th DCA 2005) (quoting Keitel v. Keitel, 716 So.2d 842, 845 (Fla. 4th DCA 1998)).
More than a year after appellant appeared as defense counsel in a criminal trial, the circuit court found him in contempt of court, and sentenced him to five months and twenty-nine days in jail. In my view, except insofar as it rests on defense counsel’s a) getting to court late the day the criminal trial began and b) misrepresenting a court order in the course of a post-trial telephone call, the adjudication of contempt should be reversed, and the case should be remanded for resentencing.
The day the criminal trial began appellant was an hour and thirteen minutes late for court because he decided to go personally to another court (this one) in an (unsuccessful) effort to block the start of trial. The trial judge was well within her rights to adjudicate him in contempt for this deliberate tardiness. See State v. Harwood, 488 So.2d 901, 902 (Fla. 5th DCA 1986) (concluding that if “the court was of the opinion that the failure of the assistant state attorney to appear on time was an offense against the authority or dignity of the court, the procedure prescribed by Florida Rule of Criminal Procedure 3.880 for direct criminal contempt should have been followed”); James v. State, 385 So.2d 1145 (Fla. 3d DCA 1980) (noting that failure of counsel to appear at a regularly set trial court hearing he had a duty to attend could constitute a direct criminal contempt); see also Smith v. State, 954 So.2d 1191, 1194 (Fla. 3d DCA 2007) (“[D]irect criminal contempt may be based upon ... an act which is facially contemptuous.”).
But the conduct that the learned trial judge seems to have found most deserving of punishment — and which became the basis for four of the five separate contempt specifications she drew — occurred in the *347 course of a telephone call that defense counsel made, after the criminal trial in which he represented one of the defendants was over, to a' woman who did not serve on the jury, although she had been initially selected. At oral argument, the state conceded that the predicate for two of the specifications based on the telephone call had inadequate support in the record.
Upon learning of the telephone call, the trial judge charged Mr. Alan with indirect criminal • contempt, on the following grounds:
a. Defendant wilfully and knowingly contacted Juror Gwendolyn Wiggins without court authorization in violation of the Court’s ruling.
b. Defendant wilfully and knowingly misrepresented to Juror Gwendolyn Wiggins that he had the Court’s permission or order which allowed him to interrogate Ms. Wiggins.
c. Defendant wilfully and knowingly interrogated Juror Wiggins against her will, or failed to cease contact when she clearly expressed her participation in the interrogation was not free and voluntary.
d. Defendant wilfully and knowingly sought production from Juror Wiggins[ ] of her medical records or interrogated her further about them, in direct contravention of the Court’s ruling.
[[Image here]]
e. Defendant wilfully and knowingly failed to appear timely for trial with his client on 12/11/06 at 9:00 a.m. -
(Emphasis supplied.) The final specification (e), added almost as an afterthought,[2] was the only, one not based on the telephone call.
The trial judge found that Mr. Alan misrepresented to Ms. Wiggins that he had express judicial permission to contact her regarding her medical records. Such an intentional misstatement constitutes indirect criminal contempt.[3] See Ex parte Crews, 127 Fla. 381, 173 So. 275, 278-79 (1937) (concluding that an information charging that Mr. Crews approached a defendant and “represented and pretended” that he “could influence the decision and judgment of the court by [ ] payment of money” sufficiently alleged contempt); Eubanks v. Agner, 636 So.2d 596, 598 (Fla. 1st DCA 1994) (“If no order has been violated, contempt can only be found if the conduct is calculated to embarrass, hinder, or obstruct the court in the administration of justice or calculated to lessen the court’s authority and dignity.”).
One species of “indirect criminal contempt concerns conduct that has occurred outside the presence of the judge that violates a court order.” Via v. State, 633 So.2d 1198, 1198 (Fla. 2d DCA 1994)). See also K.M. v. State, 962 So.2d 969, 970 (Fla. 4th DCA 2007) (disposition listing juvenile’s probation requirements was not a “valid court ordér” that could support finding juvenile in indirect criminal contempt after juvenile’s arrest for violating probation by breaching curfew); M.W. v. Lofthiem, 855 So.2d 683, 685 (Fla. 2d DCA 2003) (“Neither does M.W.’s admission to prior use of .marijuana constitute indirect crimi *348 nal contempt unless the use violated a valid court order that was in effect at the time he used the drug.”); Shields v. Shields, 636 So.2d 169, 170 (Fla. 2d DCA 1994) (“In an indirect criminal contempt proceeding, the movant must prove, beyond a reasonable doubt, that the defendant willfully violated the court order”). Accord Baker v. United States, 891 A.2d 208, 215 (D.C.Cir.2006) (“We ... hold that the elements of criminal contempt in these circumstances may be satisfied upon a showing of: (1) conduct committed in the presence of the court that disrupts the orderly administration of justice; or (2) willful disobedience of a court order, committed outside the presence of the court.” (emphasis in original)).
The court order violated need not have been reduced to writing. Indirect criminal contempt can be based on noncompliance with an oral order when “an individual acknowledges understanding a court order, and disobedience of it.” First Midwest Bank/Danville v. Hoagland, 244 Ill.App.3d 596, 184 Ill.Dec. 250, 613 N.E.2d 277, 284 (1993) (cautioning courts to “use extreme caution in holding an individual in indirect civil contempt of court based upon the violation of a court order not found in the court record” because “Molding an individual in contempt of court is a drastic remedy, especially where the sanction involves incarceration of the alleged contemnor”).
Appellant was found guilty of two specifications in the present case which alleged he violated a court order.[4] When — after the prospective juror mentioned various medical problems — the trial court allowed a belated “back strike” and excused her, defense counsel voiced the (apparently groundless) suspicion that she had been “tampered with,” and moved for a three-hour “stay” in order to obtain her medical records. The trial judge ruled that defense counsel’s “claim and request ... is nothing short of outrageous, and that is denied.” But the trial court did not order defense counsel not to contact the prospective juror or any other venireperson. Since the only request addressed to the court was for a “stay” or continuance of the proceeding, the request for a “stay” or continuance was the only request that was denied. At oral argument, the State conceded that the trial court’s ruling did not, if intended to prohibit contact, constitute an order “express enough to survive scrutiny on appeal.”
Since the evidence did not prove beyond a reasonable doubt that appellant violated a court order, he was improperly adjudicated in contempt on that basis. Because other grounds were proven, the case should be remanded for resentencing[5] as punishment for only those grounds that were proven.

. The specification charging Mr. Alan with failure to appear timely with his client on the first day of trial could have been the basis for a finding of direct criminal contempt at the time, see State v. Harwood, 488 So.2d 901, 902 (Fla. 5th DCA 1986), but the trial judge did not treat it as contempt of court until after learning of Mr. Alan’s telephone call to the venireperson.

. The specification that Mr. Alan interrogated the venireperson against her will appears to be another way of alleging that he misrepresented his authority.

. Incidentally, it is not clear that a court order is ever required in order for counsel to speak to a venireperson excused from jury service. A court order is not even required for counsel to speak to a juror once the trial is over if counsel follows "the alternative procedure under Rule Regulating The Florida Bar 4-3.5(d)(4), which allows an attorney with 'reason to believe that grounds for such challenge may exist' to interview a juror or jurors to determine whether the verdict may be subject to legal challenge after merely 'fil[ing] in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed.’” Ramirez v. State, 922 So.2d 386, 389 (Fla. 1st DCA 2006).

. A remand for resentencing would make it unnecessary to reach Mr. Alan’s contention that the trial court abused its discretion in imposing the sentence now under review for reasons extraneous to the case.